**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANNA NASH, on behalf of herself and a class of similarly situated persons, | Case No.: 1:25-cv-10415 |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| TRANS UNION, LLC | |
| Defendant. | |

Plaintiff Anna Nash ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Transunion, LLC ("Transunion" or "Defendant") seeking monetary damages, restitution, and/or injunctive relief for the proposed Class and Subclasses, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of counsel, and personal knowledge or facts that are a matter of public record.

## I.    INTRODUCTION

1.    The release, disclosure, and publication of sensitive, private data can be devasting. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1]   A data breach can have a grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain constant vigilance over the potential misuse of their information.

---

[1] Dave Maxfield & Bill Latham, Data Breaches: Perspectives from Both Sides of the Wall, S.C. Lawyer (May 2014).

2.     TransUnion is a global credit reporting agency with an estimated annual revenue of $4.2 billion.[2] Ironically, in the "About us" section of its website, Transunion states:

> As consumers and organizations increasingly transact with those they don't know, a reliable basis for trust has never been in greater demand — and in such short supply. That's where TransUnion comes in.
>
> TransUnion has been in the business of enabling trust for over 50 years as a credit reporting agency. Decades of stewarding and analyzing data have given us a holistic understanding of consumer identity. Additionally, substantial investments in new data sources and technology have fueled expansion into new areas like fraud, marketing and customer-driven analytics.

3.     Notwithstanding its commitment to "trust," Transunion breached any such trust when, between July 28 and July 30, 2025, it allowed its information system to be hacked and valuable consumer information ("PII") to be stolen (the "Data Breach").

4.     According to the notice of data breach sent to Data Breach victims, Defendant "experienced a cyber incident involving a third-party application serving our U.S. consumer support operations" which resulted in unauthorized access to personal information belonging to current and former clients.

5.     According to the notification Defendant provided to the Attorney General of Maine, the Data Breach began on July 28, 2025, and was not discovered until two days later on July 30, 2025. Additionally, the Data Breach impacted at least 4,461,511 individuals.[3]

6.     Despite knowing how valuable customer information is, Defendant failed to adequately protect Plaintiff's and Class Members' Personally Identifiable Information ("PII"). This PII was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect customers' sensitive data. Hackers targeted and obtained Plaintiff's and

---

[2] https://www.linkedin.com/company/transunion/ (last visited August 29, 2025).
[3] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3-4685-bffd-f728ce96e2fd.html (last visited August 29, 2025).

Class Members' PII because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach, including Plaintiff and class members, will remain for their respective lifetimes.

7.     As a result of the Data Breach, through which their PII was compromised, disclosed, and obtained by unauthorized third parties, Plaintiff and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiff and the other Class Members will incur ongoing out-of-pocket costs (*e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft).

8.     By this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose PII was accessed during the Data Breach.

## II.     PARTIES

### A.     Plaintiff Anna Nash

9.     Plaintiff Anna Nash is a citizen of Exeter, New Hampshire.

10.     Upon information and belief, Transunion received Plaintiff's PII from Plaintiff's use of Transunion's services. As a prerequisite to obtaining such services, Plaintiff provided Transunion with extensive and sensitive PII including at least her name, address, phone number, email address, and Social Security number ("SSN").

### B.     Defendant

11.     Defendant Transunion, LLC is a Limited Liability Company with its principal place of business at 555 West Adams, Chicago, Illinois 60661.

### III.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. §
1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711,
et seq., because at least one member of the Class, as defined below, is a citizen of a different state
than Defendant, there are more than 100 members of the Class, and the aggregate amount in
controversy exceeds $5,000,000, exclusive of interest and costs. This Court has supplemental
jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

13.    The Court has jurisdiction over Defendant because Transunion maintains its
principal place of business in this District, has sufficient minimum contacts with this District, and
has purposefully availed itself of the privilege of doing business in this District such that it could
reasonably foresee litigation being brought in this District.

14.    Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because
Transunion's principal place of business is located in this District and a substantial part of the
events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from
this District.

### IV.    FACTUAL BACKGROUND

**A. The Data Breach Occurred Because Transunion Failed to Protect Private Data
which the Company Obtained From Its Clients.**

15.    Upon information and belief, Transunion obtained Plaintiff and Class Members'
PII in exchange for provision of its credit services and products.

16.    Transunion promises its customers and the public in its "Privacy Policy" that "[w]e
maintain a comprehensive information security program with administrative (policies, standards,

and processes), physical, and technical controls designed to protect the confidentiality, integrity, and accessibility of personal information."[4]

17.     Notwithstanding these security promises, from July 28, 2025 to July 30, 2025, Transunion experienced a data breach that publicly exposed Plaintiff's and class members' sensitive PII.[5] "TransUnion attributed the July 28 breach to unauthorized access of a third-party application storing customers' personal data for its U.S. consumer support operations."[6] "TransUnion confirmed that the stolen personal information includes customers' names, dates of birth, and Social Security numbers."[7]

18.     As a credit reporting agency and provider of credit monitoring and identity theft protection services, Defendant is familiar with its obligations to protect sensitive customer information. Defendant was fully aware of the threat posed by cyber security breaches and yet still implemented insufficient privacy measures to protect Plaintiff and Class Members sensitive PII.

19.     Plaintiff and Class Members had the reasonable expectation that Defendant would comply with its obligations related to their PII. Defendant owed Plaintiff and Class Members a duty to provide reasonable security, consistent with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected their PII.

20.     Defendant failed to comply with its obligations, resulting in the Data Breach. Class Members now face years of constant surveillance of their financial and personal records.

---

[4] TransUnion LLC Privacy Notice, TransUnion, https://www.transunion.com/privacy/transunion (last visited August 1, 2025).
[5] Zack Whittaker, *Transunion says hackers stole 4.4 million customers' personal information*, Tech Crunch (July 28, 2025), https://techcrunch.com/2025/08/28/transunion-says-hackers-stole-4-4-million-customers-personal-information/ (last visited July 29, 2025).
[6] *Id.*
[7] *Id*.

21.     Transunion has provided no assurances that all personal data has been either recovered or destroyed or that the company has sufficiently improved its data security practices to the extent necessary to avoid a future similar intrusion into its systems.

**B.      Defendant Failed to Comply with Regulatory Guidance and Industry Standard Cybersecurity Practices.**

22.     Defendant's data security failure stems from its failure to comply with state and federal laws and requirements as well as industry standards governing the protection of Private Information.

23.     At least 24 states have enacted laws addressing data security practices that require that businesses that own, license or maintain PII to implement and maintain reasonable security procedures and practices and to protect PII from unauthorized access.

24.     Defendant also failed to comply with Federal Trade Commission ("FTC") guidance on protecting PII and industry-standard cybersecurity practices. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendant. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

25.     The FTC recommends:

(a)     limiting access to customer information to employees who have a business reason to see it;

(b)     keeping customer information in encrypted files provides better protection in case of theft;

(c)     maintaining up-to-date and appropriate programs and controls to prevent unauthorized access to customer information;

(d)     using appropriate oversight or audit procedures to detect the improper disclosure or theft of customer information;

(e)    monitoring both in- and out-bound transfers of information for indications of a compromise, such as unexpectedly large amounts of data being transmitted from your system to an unknown user; and,

(f)    monitoring activity logs for signs of unauthorized access to customer information.[8]

26.    The FTC has also issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

27.    In 2016, the FTC updated its publication, Protecting PII: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.[9] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

28.    The FTC recommends that businesses delete payment card information after the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information;

---

[8] Federal Trade Commission, *Financial Institutions and Customer Information: Complying with the Safeguards Rule*, https://www.ftc.gov/tips-advice/business-center/guidance/financial-institutions-customer-information-complying (last visited June 13, 2024).

[9] Federal Trade Commission, *Protecting PII: A Guide for Business*, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf (last visited June 13, 2024).

apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

29.     The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

30.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

31.     The FTC has interpreted Section 5 of the FTC Act to encompass failures to appropriately store and maintain personal data.

32.     According to the Federal Bureau of Investigation (FBI), phishing schemes designed to induce individuals to reveal personal information, such as network passwords, were the most common type of cybercrime in 2020, with such incidents nearly doubling in frequency between 2019 and 2020.[10] According to Verizon's 2021 Data Breach Investigations Report, 43% of breaches stemmed from phishing and/or pretexting schemes.[11]

---

[10] FBI, *2020 Internet Crime Report*,
https://www.ic3.gov/Media/PDF/AnnualReport/2020_IC3Report.pdf  (last visited July 30, 2025).
[11] Verizon, *2021 DBIR Master's Guide*,
https://www.verizon.com/business/resources/reports/dbir/2021/masters-guide/ (subscription required) (last visited June 13, 2024).

33.     Defendant was aware of its obligations to protect customers' PII, PHI and privacy before and during the Data Breach, yet failed to take reasonable steps to protect customers from unauthorized access. In this case, Defendant was at all times fully aware of the obligation to protect the Private Information of Defendant's customers because of its status as a leader in life insurance and annuity provision. Defendant was also aware of the significant repercussions if it failed to protect consumer data because Defendant collected Private Information from millions of individuals and knew that this Private Information, if hacked, would result in injury to individuals, including Plaintiff and Class Members.

34.     Based upon the known details of the Data Breach and how it occurred, Defendant also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to, proper firewall configuration, network segmentation, secure credential storage, rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

**C.     The Data Breach Puts Class Members at Increased Risk of Fraud and Identity Theft.**

35.     An identity thief uses victims' PII, such as name, address, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from immigration fraud, obtaining a driver's license or identification card, obtaining government benefits, and filing fraudulent tax returns to obtain tax refunds.

36.     Identity thieves can use a victim's PII to open new financial accounts, incur charges in the victim's name, take out loans in the victim's name, and incur charges on existing accounts of the victim. Plaintiff and Class Members' finances are now at risk due to the Data Breach.

37. Identity theft is the most common consequence of a data breach—118.6 million individuals had their PII exposed through data breaches in 2020.[12] Consumers lost more than $56 billion to identity theft and fraud in 2020, and over 54% of identity theft victims reported emotional distress.[13] Victims of identity theft can experience financial damage as thieves run up debts into the tens of thousands. These victims can have their credit history destroyed impairing their ability to obtain a loan, a mortgage, or even to lease housing. Victims of identity theft can experience substantial legal complications due to breaches. These risks and vulnerabilities are ongoing.

38. Plaintiff and members of the Class are now in the position of having to take steps to mitigate these damages caused by the Data Breach. Once the use of compromised non-financial PII is detected, the emotional and economic consequences to the victims are significant. Studies done by the ID Theft Resource Center, a non-profit organization, found that victims of identity theft had marked increased fear for personal financial security. The report attributes this to more people having been victims before, contributing to greater awareness and understanding that they may suffer long term consequences from this type of crime.[14]

39. Defendant failed to protect and safeguard Plaintiff and Class Members' private information, in fact Defendant failed to adhere to even its most basic obligations. As a result, Plaintiff and Class Members have suffered or will suffer actual injury, including loss of privacy, costs, and loss of time.

---

[12] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?,* Identityforce (Apr. 14, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics (last visited June 16, 2025).
[13] *Id*.
[14] *Identity Theft: The Aftermath 2013*, Identity Theft Resource Center, https://idtheftcenter.org/wp-content/uploads/2021/09/Aftermath2013.pdf (last visited June 16, 2025).

## V.    CLASS ALLEGATIONS

40.    Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> **Nationwide Class:** All natural persons in the United States whose Personally Identifiable Information was compromised as a result of the Data Breach.

41.    Excluded from the Class is Defendant, any entity in which a Defendant has a controlling interest, any of the officers or directors of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, and any Judge to whom this case is assigned, and her or her immediate family.

42.    The definition of the Class may be further modified or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

43.    **Numerosity and Ascertainability:** Plaintiff does not know the exact size of the Class or the identity of the Class Members because such information is in the exclusive control of Defendant. Nevertheless, based on published reports, the Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court. The names, phone numbers, and addresses of Class Members are identifiable through documents maintained by Defendant.

44.    **Commonality and Predominance:** This action involves common questions of law and fact as to all members of the class, which predominate over any question solely affecting individual Class Members. Common questions of law and fact include, but are not limited to, the following:

(a)    Whether Defendant engaged in the conduct alleged herein;

(b)    Whether Defendant had a legal duty to use reasonable security measures to protect Plaintiff and Class Members' PII;

(c)    Whether Defendant's failure to implement effective security measures to protect Class Member Private Information was negligent;

(d)    Whether Plaintiff and Class Members are entitled to injunctive relief;

(e)    Whether Plaintiff and Class Members are entitled to declaratory relief; and

(f)    Whether, as a result of Defendant's conduct, Plaintiff and the Class are entitled to damages and equitable relief.

45.    **Typicality:** Plaintiff's claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendant's substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other members of the Class that she seeks to represent, and there are no defenses that are unique to Plaintiff. Plaintiff and Class Member claims and injuries arise from the same facts and are based on the same law.

46.    **Adequacy:** Plaintiff is an adequate Class Representatives because her interests do not conflict with the interests of other Class Members she seeks to represent; Plaintiff has retained competent counsel that is experienced in complex class action litigation; and Plaintiff intends to vigorously prosecute this action. The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

47.    **Superiority:** A class action is superior to other available methods for fair and efficient adjudication of this controversy. No unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Class Members are relatively small compared to the expense required to individually litigate their claims against Defendant, so, absent class-wide adjudication, it would be virtually impossible for Class Members to seek individual redress against Defendant's wrongful conduct.

## VI.    CAUSES OF ACTION

### COUNT ONE
### NEGLIGENCE
**(On Behalf of Plaintiff and the Nationwide Class)**

48.     Plaintiff incorporates paragraphs 1 through 47 as if fully set forth herein.

49.     As part of its business, Defendant solicited, collected, and maintained Plaintiff's and Class Members' PII.

50.     Defendant's business depended upon collecting Plaintiff's and Class Members' PII because the credit services and products they provide requires the use and maintenance of Plaintiff and Class Members' PII.

51.     Defendant owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risks of harm to Plaintiff and Class Members collecting, employing, maintaining, storing, and managing PII.

52.     Upon collecting, accepting custody of, and storing Plaintiff and Class Members' PII, Defendant undertook and owed a duty to Plaintiff and Class safeguard and protect their PII using reliable, proven, effective, and safe methods for doing so.

53.     Defendant was fully aware that Plaintiff and Class Members' PII was sensitive, that Plaintiff and Class Members would suffer extensive and myriad injuries if their PII was wrongfully disclosed, and that providing sufficient security for the collected PII was of critical importance.

54.     Plaintiff and Class Members were foreseeable victims of any insufficient security protocols and practices by Transunion. Transunion had a duty of care to not subject Plaintiff and Class Members to an unreasonable risk of injury. Defendant knew that cyber criminals frequently use cyberattacks to steal sensitive PII and exploit it for financial gain to the substantial detriment of the individuals to whom the PII pertains.

55.     Defendant's duty to Plaintiff and Class Members extended to protecting them from the foreseeable risk of third parties' criminal conduct.

56.     Defendant's duties to Plaintiff and Class Members also included:

(a)     using reasonable and adequate technology and security procedures to promptly detect security incidents, data breaches, or unauthorized access into servers, email systems, and company networks;

(b)     safeguarding Plaintiff and Class Members' PII by employing adequate and reasonable security practices and technology; and

(c)     using reasonable care in creating, integrating, maintaining, and testing Defendant's email accounts, networks, third-party CRM providers, policies and procedures, employee trainings, and security protocols, to ensure that Plaintiff and Class Members' PII was safe and reasonably secure from theft, publication, or disclosure.

57.     Only Transunion was capable of securing its own systems and programs and making sure that the security measures employed were sufficient to safeguard Plaintiff and Class Members' PII.

58.     Transunion breached its duty of care because it failed to adequately safeguard the PII belonging to Plaintiff and Class Members. Defendant's breaches included, but were not limited to:

(a)     Failing to adequately train and test its employees on sufficiently and safely sending and storing PII;

(b)     Failing to reasonably implement protocols for promptly detecting security incidents, data breaches, or unauthorized access to sensitive data, including Plaintiff and Class Members' PII;

(c)     Failing to use adequate and reasonable security systems and policies for safeguarding the PII it possessed;

(d)     Failing to train its employees to avoid phishing emails and test employees' conduct upon receipt of suspicious emails;

(e)     Failing to enforce security policies for protecting Plaintiff and Class Members' PII;

(f)     Failing to use reasonable and adequate industry standard security systems and devices for emails, including SPAM filters, DMARC compliance, and/or Sender Policy Framework compliance;

(g)     Failing to ensure that Transunion did not maintain or keep PII on its systems, servers, and devices for longer than necessary;

(h)     Failing to use reasonable care in protecting, maintaining, using, and erasing the PII that Transunion possessed.

59.     Transunion's failure to fulfill these duties was reckless, grossly negligent, and wrongful considering the foreseeable and substantial risks that such a failure would entail.

60.     Plaintiff and Class Members have already suffered injuries and are at imminent risk of additional injuries as a foreseeable and proximate result of Defendant's negligence.

61.     Plaintiff's and Class Members' PII has been publicly exposed as a direct result of Defendant's breach of its duty to use reasonable care to adequately protect and secure Plaintiff and Class Members' PII.

62.     Plaintiff and Class Members have suffered and will continue to suffer damages which are the direct and proximate result of Defendant's negligent conduct. These damages include but are not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of their PII.

63.     Defendant's wrongful acts and omissions constituted and continue to constitute common law negligence.

64.     Plaintiff and Class Members are accordingly entitled to damages in an amount to be proven at trial.

**COUNT TWO**
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiff and the Nationwide Class)**

65.    Plaintiff incorporates paragraphs 1 through 47 as if fully set forth herein.

66.    The FTC Act prohibits "unfair practices in or affecting commerce."[15] It imposed and continues to impose on Defendant a duty to Plaintiff and Class Members to provide adequate and fair practices, computer systems, and data security for safeguarding Plaintiff and Class Members' PII. In enforcement actions, the FTC has treated businesses' failure to employ reasonable measures to adequately secure consumer's confidential data as an unfair act or practice prohibited by Section 5 of the FTC Act.[16]

67.    Defendant's failure to use reasonable and appropriate methods to guard Plaintiff and Class Members' PII against unauthorized access is an unfair act or practice that Section 5 of the FTC Act prohibits.

68.    Defendant violated the FTC Act by failing to comply with industry-standard data security practices, as described above.

69.    Defendant's collection and maintenance of Plaintiff's and Class Members' PII were actions central to its business and affected commerce.

70.    The class of people that the FTC Act is intended to protect include Plaintiff and Class Members.

---

[15] 15 U.S.C. § 45(a).
[16] *See, e.g.*, Complaint, *Drizly, LLC and James Cory Rellas*, FTC Matter No. 2023185 (Oct. 24, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/202-3185-Drizly-Complaint.pdf (last visited July 16, 2025); Complaint, *Fandango*, FTC Matter No. 1323089 (Aug. 19 2014), https://www.ftc.gov/system/files/documents/cases/140819fandangocmpt.pdf (last visited July 16, 2025).

71. The injuries that Plaintiff and Class Members suffered and continue to suffer and that resulted from the data breach are the types of injuries that the FTC Act was intended to prevent.

72. As a direct and proximate result of Defendant's negligence and violations of the FTC Act, Plaintiff and Class Members have suffered and will continue to suffer injury, which include but are not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of their PII.

73. Plaintiff and the Class are accordingly entitled to damages in amounts to be proven at trial.

**COUNT THREE**
**GROSS NEGLIGENCE**
**(On Behalf of Plaintiff and the Nationwide Class)**

74. Plaintiff incorporates paragraphs 1 through 47 as if fully set forth herein.

75. Plaintiff and Class Members entrusted Transunion with highly sensitive and inherently personal private data subject to laws on confidentiality and unfair trade practices.

76. In collecting, obtaining and storing Plaintiff's and Class Members' PII, Transunion owed a duty of reasonable care in safeguarding the PII.

77. Transunion's networks, systems, protocols, policies, procedures and practices were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff's and Class Members' PII were secured from unauthorized access.

78.    Transunion's networks, systems, protocols, policies, procedures and practices were not reasonable given the sensitivity of the Plaintiff's and Class Members' private data.

79.    Transunion did not comply with state and federal laws and rules concerning the use of safekeeping of this private data.

80.    Despite knowing its networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff's and Class Members' PII were secured from unauthorized access, Transunion ignored the inadequacies and consciously disregarded the risk of unauthorized access it created.

81.    Transunion's behavior establishes facts evidencing a reckless disregard for Plaintiff's and Class Members' rights.

82.    Transunion was, therefore, grossly negligent.

83.    Transunion's negligence is directly linked to Plaintiff's and Class Members' injuries. As a result of Transunion's reckless disregard for Plaintiff and Class Members' rights by failing to secure their PII, despite knowing its networks, systems, protocols, policies, procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiff and Class Members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The

unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of their PII.

84.     The harm to Plaintiff and the Class Members was a proximate, reasonably foreseeable result of Transunion's breaches of the applicable laws and regulations.

85.     Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT FOUR
## BREACH OF IMPLIED CONTRACTS
### (On Behalf of Plaintiff and the Nationwide Class)

86.     Plaintiff incorporates paragraphs 1 through 47 as though fully set forth herein.

87.     Plaintiff and Class Members provided their PII to Transunion in order to obtain financial products and services such as life insurance and annuities.

88.     By providing their PII, and upon Transunion's acceptance of such information, Plaintiff and Class Members on one hand, and Defendant on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby Transunion was obligated to take reasonable steps to secure and safeguard that information.

89.     Transunion had an implied duty of good faith to ensure that the PII of Plaintiff and Class Members in its possession was only used in accordance with its contractual obligations.

90.     Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff's and Class Members' PII and to comply with industry standards and state laws and regulations for the security of this information, and Transunion expressly assented to these terms in its Privacy Policy.

91.     Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying for the services provided by Defendant and/or providing the PII required by Defendant.

92.     Transunion breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff and Class Members' PII, resulting in the Data Breach. Transunion unreasonably interfered with the contract benefits owed to Plaintiff and Class Members.

93.     Further, on information and belief, Transunion has not yet provided Data Breach notifications to some affected Class Members who may already by victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII that they provided to Transunion. These Class Members are unaware of the potential source for the compromise of their PII.

94.     The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

95.     As a result of Transunion's conduct, Plaintiff and Class Members did not receive the full benefit of the bargain and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

96.     Neither Plaintiff, nor Class Members, nor any reasonable person would have provided their PII to Transunion had it disclosed that its security was inadequate or that it did not adhere to industry-standard security measures.

97.     As a result of Defendant's breach, Plaintiff and the Class Members have suffered actual damages resulting from theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

98.     As a result of Defendant's breach, Plaintiff and the Class Members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII. As a result, Plaintiff and the Class Members have suffered actual identity theft and the inability to control their PII.

99.     Accordingly, Plaintiff and Class Members have been injured as a result of Transunion's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT FIVE
## BREACH OF IMPLIED DUTY OF
## GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Nationwide Class)

100.    Plaintiff incorporates paragraphs 1 through 47 as though fully set forth herein.

101.    Plaintiff and Class Members were the intended beneficiaries of contracts with Defendant.

102.    These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations—both explicit and fairly implied—and would not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts. These included the covenants that Defendant would act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff's and Class Members' PII and to

comply with industry standards and federal and state laws and regulations for the security of this information.

103.    Defendant entered into special relationships with Plaintiff and Class Members, who entrusted their confidential PII to Defendant.

104.    Defendant promised and was obligated to protect the confidentiality of Plaintiff's and Class Members' PII from disclosure to unauthorized third parties. Defendant breached the covenant of good faith and fair dealing by failing to take adequate measures to protect the confidentiality of Plaintiff's and Class Members' PII, which resulted in the Data Breach. Defendant unreasonably interfered with the contract benefits owed to Plaintiff and Class Members by failing to implement reasonable and adequate security measures consistent with industry standards to protect and limit access to the PII of Plaintiff and the Class in Defendant's possession.

105.    Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying for the services they received and entrusting Defendant with the confidential PII.

106.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members did not receive the full benefit of their bargain—services with reasonable data privacy—and instead received services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts. Plaintiff and Class Members have suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class Members paid for, and the services they received without reasonable data privacy.

107.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered actual damages resulting from the theft of their PII and remain at imminent risk of suffering additional damages in the future.

108.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered actual damages resulting from their attempt to ameliorate the effect of the Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII.

109.    As a direct and proximate cause of Defendant's conduct, Plaintiff and Class Members suffered injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendant from its conduct. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law.

**COUNT SIX**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

110.    Plaintiff incorporates paragraphs 1 through 47 as though fully set forth herein.

111.    Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for services.

112.    Transunion collected, maintained, and stored the PII of Plaintiff and Class Members and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiff and Class Members. The collection, maintenance, and storage of Plaintiff's and Class Members' PII was a central part of Transunion's business and ability to gain profits.

113.    The money that Defendant directly or indirectly received from Plaintiff and Class Members should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendant failed to implement—or adequately

implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

114.    As a result of Defendant's failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class Members paid for, and the services they received without reasonable data privacy.

115.    Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members because Defendant failed to implement the data management and security measures that are mandated by industry standards and that Plaintiff and Class Members paid for.

116.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by Defendant. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendant traceable to Plaintiff and the Class.

## COUNT SEVEN
## DECLARATORY JUDGMENT
### (On Behalf of Plaintiff and the Nationwide Class)

117.    Plaintiff incorporates paragraphs 1 through 47 as though fully set forth herein.

118.    Plaintiff and the Class have stated claims against Defendant based on negligence, negligence per se, gross negligence, breach of implied contracts, breach of implied duty of good faith and fair dealing, and unjust enrichment.

119.    Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII of Plaintiff and the Class, as evidenced by the Data Breach.

120.    As a result of the Data Breach, Defendant's system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII of Plaintiff and the Class going forward.

121.    Plaintiff seeks a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiff and the Class. Specifically, Plaintiff and the Class seek a declaration that Defendant's existing security measures do not comply with its obligations, and that Defendant must implement and maintain reasonable security measures on behalf of Plaintiff and the Class to comply with its data security obligations.

## VII.    PRAYER FOR RELIEF

122.    Plaintiff, on behalf of herself and on behalf of the proposed Classes, requests that the Court:

(a)    Certify this case as a class action, appoint Plaintiff as class representative, and appoint Plaintiff's Counsel as Class Counsel for Plaintiff to represent the Class.

(b)    Find that Transunion breached its duties to safeguard and protect the PII of Plaintiff and Class Members that was compromised in the Data Breach;

(c)    Award Plaintiff and Class Members appropriate relief, including actual and statutory damages, restitution and disgorgement;

(d)    Award equitable, injunctive and declaratory relief as may be appropriate;

(e)    Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

(f)    Award pre-judgment and post-judgment interest as prescribed by law; and

(g)     Grant additional legal or equitable relief as this Court may find just and proper.


Dated: August 29, 2025                          Respectfully submitted,

                                                By: */s/Gary M. Klinger*
                                                Gary M. Klinger
                                                **MILBERG COLEMAN BRYSON**
                                                **PHILLIPS GROSSMAN, PLLC**
                                                227 W. Monroe Street, Suite 2100
                                                Chicago, IL 60606
                                                Phone: 866.252.0878
                                                Email: gklinger@milberg.com

                                                Thomas E. Loeser (*pro hac vice* forthcoming)
                                                Andrew J Fuller (*pro hac vice* forthcoming)
                                                **COTCHETT, PITRE & McCARTHY LLP**
                                                1809 7th Ave., Ste. 1610
                                                Seattle, WA 98101
                                                Tel: (206) 802-1272
                                                tloeser@cpmlegal.com
                                                Afuller@cpmlegal.com

                                                *Attorneys for Plaintiff and the Proposed Class*